# Exhibit A

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

```
-----------------------------------------------------------------
UNITED STATES OF AMERICA,                   :
                                            :
                                            :    Case No. 23-cr-110 (MKV)
             v.                             :
                                            :
CHRISTY CORVALAN,                           :
                                            :
                    Defendant.              :
-----------------------------------------------------------------
```

### DECLARATION OF HARPREET DHANOTA

Harpreet Dhanota, pursuant to 28 U.S.C. § 1746, hereby declares as follows:

1.       I am Director, Anti-Counterfeiting/Global Product Security, Head of Investigations, at Gilead Sciences, Inc. ("Gilead"). I am fully familiar with the facts set forth herein in support of Gilead's Victim Impact Statement, filed in the above-captioned matter.

2.       In the United States, the only distributors to whom Gilead sells its Gilead-branded medications are Gilead-authorized distributors.  A current list of Gilead's authorized distributors is available on Gilead's website: https://www.gilead.com/medicines/authorized-distributors.

3.       In the United States, Gilead sells its Gilead-branded medication at a single price: the Wholesale Acquisition Cost ("WAC") price.  The WAC price is set annually, and does not change from distributor to distributor.  The correct WAC pricing for the Gilead-branded medications at issue for the years 2020-2022 are set forth in pages 11-13 of Gilead's Victim Impact Statement.

4.       The Gilead-branded medication at issue here, namely ATRIPLA®, BIKTARVY®, COMPLERA®, DESCOVY®, EMTRIVA®, GENVOYA®, ODEFSEY®, STRIBILD®, and TRUVADA® are available only by prescription.  That means that each patient who was dispensed a counterfeit Gilead-branded medication necessarily had a prescription for that

specific Gilead-branded medication by his or her health care provider. The only medication that could have lawfully been dispensed to each such patient was an authentic bottle of Gilead-branded medication. As noted above, Gilead only sells its authentic Gilead-branded medication to Gilead-authorized distributors. Thus, each of the counterfeits sold and distributed by Defendants displaced the sale of an equivalent bottle of authentic Gilead-branded medication from a Gilead-authorized distributor.

5.    In calculating its lost profits, Gilead publicly reports its cost of goods sold ("COGS") as a percent of net global sales across all products in its Form 10-K annual reports. Gilead has applied that publicly reported COGS figure in calculating its lost profits in its Victim Impact Statement.

6.    In connection with Gilead's anti-counterfeiting civil litigation, *Gilead Sciences, Inc. v. Safe Chain Solutions, LLC*, Case No. 21-cv-4106 (E.D.N.Y.), Gilead determined that its publicly reported COGS in its Form 10-K – which, again, is reported as a percent of net global sales across all products – is higher than Gilead's actual COGS for the U.S. Gilead-branded medications at issue here. Specifically, Gilead determined that Gilead's reported COGS in its Form 10-K reports was higher than Gilead's actual COGS for the manufacture of the following medications for sale in the United States: ATRIPLA®, BIKTARVY®, COMPLERA®, DESCOVY®, EMTRIVA®, GENVOYA®, ODEFSEY®, RANEXA®, STRIBILD®, and TRUVADA®.

7.    By using the higher COGS figure from its Form 10-K reports, Gilead's calculation of its lost profits in its request for restitution is a conservative estimate that understates Gilead's actual losses.

8.     The rebate data described in pages 4 and 11-13 of Gilead's Victim Impact
Statement comes from information that Gilead obtained from CMS, and is accurate.

I declare under penalty of perjury that the foregoing is true and correct.


Executed on: November 21, 2024 Milpitas, California


Harpreet Dhanota